# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CRIMINAL NO. 1:17-CR-269 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **MAURICE LACKEY,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Defendant Maurice Lackey ("Lackey") moves the court to suppress evidence resulting from a warrantless search of a vehicle he was driving. (Doc. 24). We will deny Lackey's motion.

## I. Findings of Fact[1]

In the early morning hours of June 18, 2017, Lackey was operating a silver Cadillac Escalade (the "vehicle"), which was registered to Tasha Adams. (Tr. 4:4-15, 11:9-11). Akeem Simmons ("Simmons") was riding in the front passenger seat. (Id. at 23:13-14). At a traffic light at the intersection of Walnut and North 17th Streets in Harrisburg, Pennsylvania, Lackey turned left onto North 17th Street, failing to yield the right of way to Harrisburg Police Sergeant Ty Meik ("Sergeant Meik"), who was traveling in the opposite direction on Walnut Street. (Id. at 4:5-5:7). Sergeant Meik

---

[1] The above factual narrative derives from testimonial evidence adduced during the suppression hearing in this matter, together with exhibits submitted by the parties. Citations to hearing exhibits are abbreviated as "Gov't Ex." The court reporter has provided the court with a rough transcript of the November 2, 2018 suppression hearing. Citations thereto are abbreviated as "Tr." Pagination of the rough draft may vary from pagination of the official transcript.

had to "slam on [his] brakes" to avoid hitting Lackey in the intersection. (Id. at 5:7-8, 19:20-25).

Sergeant Meik began to follow Lackey's vehicle as it continued south on North 17th Street, but did not immediately employ his emergency lights or siren. (Id. at 6:23-7:6, 7:23-8:6). After driving approximately half a block, Lackey pulled the vehicle to the right side of the road and parked two feet away from the curb. (Id. at 7:24-8:3, 21:7-11). Sergeant Meik pulled in behind Lackey, engaged his emergency lights, and effected a traffic stop due to Lackey's prior failure to yield in the intersection. (Id. at 8:3-10).

Sergeant Meik approached the driver's side window and requested Lackey's driver's license, proof of automobile insurance, and registration. (Id. at 8:23-24, 9:12-13). He also requested Simmons' identification. (Id. at 10:1-4). Both Lackey and Simmons appeared nervous. (Id. at 9:17-21, 10:5-9, 41:11-18). Sergeant Meik ran Lackey's and Simmons' information and found that Simmons had active warrants for his arrest. (Id. at 11:14-19).

Shortly after Sergeant Meik had effected the traffic stop, Harrisburg Police Officers Darrin Bates ("Officer Bates") and Michael Rudy ("Officer Rudy") arrived on the scene. (Id. at 10:20-11:1, 29:1-4). Officer Bates approached the vehicle and identified the passenger as Simmons, whom Officer Bates recognized from previous interactions and knew to be wanted by police.[2] (Id. at 29:15-21, 37:12-38:11). In light of Simmons' outstanding warrants, Sergeant Meik asked Simmons to step out of the

---

[2] According to Sergeant Meik, Simmons indicated during his arrest that he was aware he was wanted by police. (Tr. 12:3-9; Gov't Ex. 1 at 5).

2

vehicle and placed him under arrest. (Id. at 11:22-12:2). As Simmons exited, Officer Bates noticed the "fresh" smell of marijuana coming from the vehicle. (Id. at 30:23-31:1; Gov't Ex. 1 at 5). Sergeant Meik then searched Simmons incident to arrest, finding a bag of suspected marijuana, a cell phone, and approximately $990 in cash in Simmons' shorts pocket. (Tr. 12:10-16).

When Officer Rudy arrived, Sergeant Meik was talking to Lackey through the driver's side window. (Id. at 40:15-18). Officer Rudy remained behind Sergeant Meik on the driver's side of the vehicle and noted the "overwhelming smell" of air freshener and a less noticeable odor of marijuana emanating from the vehicle. (Id. at 41:1-11; Gov't Ex. 1 at 9). Lackey was informed that officers would conduct a search of the vehicle, and he complied when asked to exit the vehicle. (Tr. 42:16-21). Sergeant Meik explained to Lackey that the basis for searching the vehicle was the marijuana found on Simmons. (Id. at 12:25-13:12, 24:6-24). Lackey repeatedly refused to give consent to search, but he was nonetheless removed and Officer Rudy began the search. (Id. at 13:2-5, 31:15-23, 32:1-2, 42:16-43:10). Upon opening the upper compartment of the vehicle's center console—within easy reach of either driver or passenger—Officer Rudy discovered a Sig Sauer .45 caliber handgun. (Id. at 32:2-4, 43:9-23). He immediately paused his search and placed Lackey under arrest. (Id. at 14:1-3, 43:23-24). Officer Bates resumed the search and discovered cocaine base in the upper compartment of the center console, a second Sig Sauer .45 caliber handgun in the lower compartment, and a bag of marijuana "stuffed" between the passenger seat and center console. (Id. at 14:15-20, 32:7-33:11).

3

## II. Procedural History

A federal grand jury returned a three-count indictment charging Lackey with possession with intent to distribute cocaine base and marijuana in violation of 21 U.S.C. § 841(a)(1) (Count I), possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count II), and possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count III). Lackey pled not guilty. He moved to suppress all evidence found during the June 18, 2017 vehicle search, and the court convened a suppression hearing on November 2, 2018. The motion is fully briefed and ripe for disposition.

## III. Discussion

Lackey argues that the police lacked probable cause to search the vehicle without a warrant. He contends that Sergeant Meik based the search of the vehicle solely on the marijuana found on Simmons after he had exited the vehicle, which in itself did not establish probable cause. The government counters that the totality of the circumstances created probable cause authorizing a warrantless search of the vehicle for marijuana pursuant to the automobile exception to the warrant requirement.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. amend. IV; Horton v. California, 496 U.S. 128, 133 (1990). Warrantless searches generally are presumed to be unreasonable, subject to only "a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One of those exceptions is the "automobile exception" to the warrant requirement, which

4

permits the warrantless search of a vehicle when law enforcement has "probable cause to believe that the vehicle contains evidence of a crime." United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (citation omitted). If a warrantless search of the vehicle is authorized under the automobile exception, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. (quoting United States v. Ross, 456 U.S. 798, 825 (1982)).

Probable cause is an amorphous concept. Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." Id. (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981). If there is a "fair probability" that evidence of a crime or contraband would be found in a vehicle, then probable cause to search the vehicle exists. Donahue, 764 F.3d at 301 (quoting Gates, 462 U.S. at 238). Whether probable cause exists is an *objective* determination based on the totality of the circumstances present at the time of the search. See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005).

In the case *sub judice*, we find that probable cause to search the vehicle existed. Both Sergeant Meik and Officer Rudy observed that Lackey and Simmons appeared nervous during the traffic stop. Officers Bates and Rudy testified, consistent with their reports, that they noticed the smell of marijuana emanating from the vehicle. "It is well settled that the smell of marijuana alone . . . may establish not merely reasonable suspicion, but probable cause." United States

v. Green, 897 F.3d 173, 186 (3d Cir. 2018) (alteration in original) (quoting United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006)).  Moreover, Simmons, who was riding in the front passenger seat of the vehicle, was lawfully searched incident to arrest and found to have marijuana on his person.  These circumstances, viewed in their totality, objectively provide a "fair probability" that evidence of a crime or contraband—namely, marijuana—would be found in the vehicle.  And because marijuana could easily be concealed in the vehicle's center console, the officers were authorized to search the center console compartments.  Donahue, 764 F.3d at 300 (quoting Ross, 456 U.S. at 825).  Accordingly, the June 18, 2017 warrantless search of the vehicle was permissible under the automobile exception to the warrant requirement.

## IV. Conclusion

Because there was no Fourth Amendment violation, we will deny Lackey's motion (Doc. 24) to suppress evidence.  An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   November 13, 2018