# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:17-CR-269** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **MAURICE LACKEY,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 2nd day of December, 2019, upon consideration of the motion (Doc. 96) *in limine* by defendant Maurice Lackey ("Lackey"), seeking to exclude testimony of Sergeant First Class Kimberly Boltz ("SFC Boltz"), an expert witness on the subject of IONSCAN technology and practices, and who performed the IONSCAN in this case using a Smiths Detection IONSCAN 500DT machine, (Doc. 98 at 4), and the motion having been fully briefed and all parties thus having been heard by the court, (Docs. 97, 98), and the court observing that, under Federal Rule of Evidence 702, a witness qualified as an expert may testify as to their opinion when: the expert's specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact of consequence; the expert's testimony is grounded in sufficient facts or data; and the expert's opinion derives from reliable principles and methods and results from a reliable application of said principles to the facts of the case, FED. R. EVID. 702; see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588-89 (1993); *In re* Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994), and that Rule 702 has thus been described by the Third Circuit as embodying

"a trilogy of restrictions on expert testimony," to wit: qualification, reliability, and fit, Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli, 35 F.3d at 741-43), and the court, addressing each of Rule 702's requirements in turn, noting: *first*, that Lackey does not substantively attack SFC Boltz's qualifications, aside from declaring that "experience alone does not render a person qualified to give expert testimony," (Doc. 97 at 4), and the court finding, upon review of SFC Boltz's training and substantial experience in the field, and pursuant to the Third Circuit's mandate that courts "interpret the qualification requirement 'liberally,'" Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998), that SFC Boltz is well-qualified to testify as an expert witness regarding IONSCAN, IONSCAN tests and reports, and the IONSCAN machine used in this case; *second*, with respect to the reliability of SFC Boltz's opinions, that Lackey claims that SFC Boltz's anticipated testimony is unreliable because (i) the government has not described SFC Boltz's methodology; (ii) SFC Boltz's previous IONSCAN reports were not identical and involved "different money, recovered under different conditions, examined at different time intervals, handled by law enforcement in different manners, and possibly processed using different techniques"; and (iii) such haphazard examinations are not "testable, subject to peer review, subject to uniform standards, or generally accepted by the relevant community," (see Doc. 97 at 4-5); and the court being mindful that the standard for measuring reliability is "relatively low," Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 658 F. Supp. 2d 630, 635 (M.D. Pa. 2009) (quoting In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999)), and that the basis for an expert opinion "does not have to be perfect," In re TMI

2

Litig., 193 F.3d at 665 (quoting In re Paoli, 35 F.3d at 744), and following our review of SFC Boltz's experience and methodology, the court finding that SFC Boltz utilized standard procedures gleaned from years of experience performing IONSCAN tests and learned while obtaining a certification for the IONSCAN 500DT, and that prior tests undoubtedly occurred in different contexts but were performed using purportedly identical procedures, and that the test of the currency obtained from Lackey and Akeem Simmons employed these procedures, and further that ION spectrum mobility detectors like the IONSCAN 500DT are used by various federal agencies and all branches of the military, and that the average amount of compounds found on currency is determined by the Pennsylvania National Guard, which tests currency provided by banks and casinos in the Commonwealth with IONSCAN 500DT devices, (see Doc. 98 at 7-11), and the court additionally pointing out that the propriety of the methods used by SFC Boltz are supported by the anticipated testimony of Dr. Richard Lareau, Ph.D, an expert in the fields of trace evidence and ION Spectrum Mobility, who is expected to describe how IONSCAN machines work, (see id. at 5-7), and finally noting that courts routinely find that IONSCAN machines are widely used, see, e.g., Braun v. Maynard, 652 F.3d 557, 561 (4th Cir. 2011), and courts have accepted them as reliable in the Daubert context, see, e.g., United States v. Hernandez-De La Rosa, 606 F. Supp. 2d 175, 188-89 (D.P.R. 2009), Munoz v. United States, No. 07-CV-2080, 2008 WL 2942861, at *52 (E.D.N.Y. July 28, 2008); and *third*, that Lackey does not dispute the fitness of SFC Boltz's testimony, and the court observing that the question of fitness "goes primarily to relevance," Daubert, 509 U.S. at 591, and, that

Rule 702 embraces a "liberal policy of admissibility," under which it is preferable to admit any evidence that may assist the factfinder, Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)), and finding that SFC Boltz's testimony will be helpful to the jury in understanding how the currency was tested in this case and whether it was exposed to controlled substances, and will not "merely tell the jury what result to reach," FED. R. EVID. 704, and further finding that Lackey's concerns go primarily to weight but not admissibility of SFC Boltz's testimony, and that Lackey may properly explore those concerns during cross-examination at trial, it is hereby ORDERED that Lackey's motion (Doc. 96) to exclude SFC Boltz's testimony in its entirety is DENIED without prejudice to defense counsel's right to raise applicable and appropriate objections to the expert's specific testimony at the time of trial.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: December 2, 2019