# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CRIMINAL NO. 1:17-CR-269 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **MAURICE LACKEY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Maurice Lackey ("Lackey") filed a pretrial motion (Doc. 102) *in limine* seeking to exclude evidence obtained from an iPhone seized from Lackey during a search incident to his arrest. For the following reasons, we will grant in part and deny in part Lackey's motion.

## I. Factual Background & Procedural History

Lackey was arrested after a routine traffic stop on June 18, 2017. (Doc. 61 at 1). During a lawful search of Lackey incident to arrest, officers seized a black and silver Apple iPhone and $395 in cash. (Doc. 106 at 4). Officers also seized two firearms and cocaine base from the car he was driving. (Id.) A federal grand jury returned a three-count superseding indictment charging Lackey with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count I), possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count II), and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count III). (See Doc. 83). Lackey pled not guilty and moved to suppress all evidence found in the June 18, 2017 vehicle search. (Doc. 24). After a hearing, we denied Lackey's motion to suppress. (See Doc. 61).

The government intends to introduce photographs, search history, and text message conversations found on the seized iPhone. (See Doc. 106). Lackey filed a motion (Doc. 102) *in limine* to exclude that evidence. The motion is briefed and ripe for disposition.

## II. Discussion

Lackey claims the evidence obtained from the subject iPhone is inadmissible because it is (1) unauthenticated, (2) irrelevant, (3) hearsay, (4) character evidence, and (5) unfairly prejudicial. (Doc. 103 at 4-8). We begin with authentication.

### A. Authentication

The parties dispute whether the iPhone found on Lackey at the time of his arrest can be authenticated as his phone, thereby authenticating its contents. Federal Rule of Evidence 901(a) mandates that all admissible evidence must be authenticated. The authentication standard is "slight," United States v. Turner, 718 F.3d 226, 232 (3d Cir. 2013) (citation omitted), and will be satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is," id. (quoting FED. R. EVID. 901(a)). Once the proponent makes a *prima facie* showing of authenticity, the evidence goes to the jury. Id. (citation omitted). The government can use circumstantial evidence, including the context in which the evidence was obtained and its contents, to authenticate evidence. Id. at 232-33.

The government meets its slight *prima facie* burden here, assuming it can lay the proper foundation at trial. First, the phone at issue was found on Lackey's person, suggesting that it belongs to him. (Doc. 106 at 6); see also United States v. Mebrtatu, 543 F. App'x 137, 140 (3d Cir. 2013) (nonprecedential); accord Turner, 718

2

F.3d at 233; United States v. McGlory, 968 F.2d 309, 329 (3d Cir. 1992). Second, the phone's contents suggest that it belongs to Lackey. The phone identifies "Maurice Lackey" as the "My Card" contact at the top of the contact list. (Doc. 106 at 7). The Apple ID associated with the phone is boop1011@icloud.com, which is a reference to Lackey's street name, "Boop." (Id.) Exhibits 6 through 10 taken from the phone are "selfies" of Lackey. (Id. at 9-10). Finally, several of the text messages allegedly refer to the operator of the phone as "Maurice." (Id. at 7). There is sufficient evidence that the iPhone "is what the proponent claims it is," *i.e.*, Lackey's phone. The government has made its *prima facie* authentication showing.

### B. Relevance, Unfair Prejudice, and Hearsay

Lackey claims that each piece of evidence obtained from the iPhone is inadmissible because it is irrelevant, hearsay, and unfairly prejudicial. (Doc. 103 at 4-8). We address the challenged evidence *seriatim*.

#### 1. *Photographs*

Lackey first seeks to prevent the introduction of photographs. Exhibits 1 through 5 are photographs of firearms either sent or received on the iPhone. (Doc. 106 at 8-9; Doc. 110, Exs. 1-5). Exhibits 6 through 10 are "selfies" of Lackey holding large quantities of cash. (Doc. 106 at 9-10; Doc. 110, Exs. 6-10). Exhibits 11 through 12 are photographs of Lackey next to a Cadillac Escalade with his arms extended as if he were holding firearms. (Doc. 106 at 10; Doc. 110, Exs. 11-12).

##### a. **Firearms Photographs**

Assuming the government can lay the proper foundation, the photographs of firearms on Lackey's phone are relevant to Lackey's instant firearm charges.

3

Evidence is relevant when it tends to "make a fact more or less probable than it would be without the evidence" and that fact is consequential to the outcome of the case. FED. R. EVID. 401. Rule 401's definition of relevant evidence is "very broad" and "does not raise a high standard." Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 544 (3d Cir. 2007) (citation omitted). The court may nonetheless exercise its discretion to exclude relevant evidence if that evidence's "probative value is substantially outweighed by a danger of … unfair prejudice." FED. R. EVID. 403. Rule 403 is meant to guard against *unfair* prejudice, not all prejudice. See United States v. Cunningham, 694 F.3d 372, 390 (3d Cir. 2012). Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note to 1972 proposed rules.

If believed, the fact that Lackey was receiving and sending photographs of firearms in advance of his arrest makes the fact that he unlawfully possessed a firearm and used it in furtherance of his drug charge—a consequential fact in the outcome of this case—"more … probable than it would be without the evidence." FED. R. EVID. 401. Lackey argues that it is "not illegal to have an interest in firearms, or pictures of firearms," especially those that are not alleged to have been found in his possession at the time of his arrest. (Doc. 103 at 5). That may be true, but the exchange of photographs of firearms in the months leading up to the instant offense, sent or received contemporaneously with Lackey's internet searches for similar firearms, tends to show Lackey's efforts to obtain and possess a firearm. (See Doc. 106 at 8-9). This evidence is material to at least Counts II and III, which

4

charge Lackey with unlawful use and possession of a firearm.  The evidence thus meets the Federal Rules' broad definition of "relevant."

The photographs of firearms are not unfairly prejudicial.  The evidence is probative of Lackey's attempts to obtain a firearm later used in the commission of a crime.  Lackey argues that admission of these photographs would "incite the emotions of the jury, which would cloud their reasoned evaluation of the factual evidence in furtherance of a just result."  (Doc. 103 at 8).  General assertions of prejudice are insufficient.  This evidence may prejudice Lackey, just as any adverse evidence could prejudice any criminal defendant.  But Lackey has not explained why that prejudice is unfair or substantially outweighs the evidence's probative value.  Exhibits 1 through 5 are therefore admissible.

### b. "Selfies"

Exhibits 6 through 10 are inadmissible.  The photographs in these exhibits include "selfies" of Lackey holding large quantities of cash.  The government does not intend to introduce metadata regarding these photographs "as it is irrelevant if they were sent or received."  (Doc. 106 at 9).  Although the bar for relevance is low, Moyer, 473 F.3d at 544, the government has failed to show how these images are relevant to the charged offenses in this case.  Without metadata, it is impossible to know when these photos were taken or whether they have any temporal relationship with Lackey's firearm or drug charges.  Moreover, the possession of cash in large amounts, while associated with criminal activity, is not necessarily the result of criminal activity.

5

The government's reliance on United States v. Cardena, 842 F.3d 959, 985 (7th Cir. 2016), is unpersuasive. There, the government intended to introduce evidence of the defendant's lavish lifestyle and juxtapose that lifestyle against evidence of his legitimate sources of income (*e.g.*, tax returns). Id. at 981. The district court allowed that evidence, ruling that "evidence of his unexplained wealth was relevant and admissible, *provided that the government introduce evidence 'that the income was not obtained through legitimate means*.'" Id. (emphasis added). The government here does not attempt to show that the money shown in Exhibits 6 through 10 was not obtained through lawful means. Instead, it argues that the mere existence of a photograph of an alleged criminal holding large quantities of money suggests that the money was obtained through unlawful activity. Even the broad relevance standard does not allow this inferential leap.

Even if Exhibits 6 through 10 are relevant, they do not survive Rule 403. What minimal probative value these images may have is substantially outweighed by their prejudicial effect. These images risk misleading the jury into thinking that Lackey's possession of cash suggests that he committed a crime. In other words, these images unfairly suggest, without evidentiary support, that Lackey committed a crime and benefitted financially.

    c.    **Car Photographs**

Exhibits 11 through 12 are undated photographs of Lackey next to a Cadillac Escalade with his hands raised as if he were holding firearms. (Doc. 106 at 10). The government claims these are relevant to "establish his possession of the firearms on

6

June 18, 2017, as they show the defendant in a vehicle, nearly identical to the one he was arrested in on June 18, 2017 gesturing as if to hold firearms." (Id.)

These images are not relevant. First, the Escalade in these photographs is not the same Escalade as the one Lackey was driving the night he was arrested. (Id. at 10 n.2). The fact that Lackey has taken a photo in front of one Escalade does not make it more or less likely that he would drive another Escalade while unlawfully possessing guns and drugs the night he was arrested. See FED. R. EVID. 401. Second, these photographs cannot possibly "establish his possession of firearms on June 18, 2017," because Lackey is not holding firearms in the photographs, but is instead "gesturing" as if he was holding firearms. (Doc. 106 at 10). It is unclear how these undated photographs, depicting no firearms and a different vehicle, are relevant to establishing Lackey's possession of a firearm on June 18, 2017. Exhibits 11 through 12 are therefore inadmissible as irrelevant.

### 2. *Internet Search History*

The government intends to introduce testimony about the internet search history found on the phone at issue. (Doc. 106 at 11-12). Specifically, the expected testimony centers around Lackey's searches for firearms. (Id.) The search history testimony that the government intends to introduce is relevant. Particular searches tend to suggest that Lackey was researching different types of firearms—including a Sig Sauer, the gun found upon Lackey's arrest—around the time of the unlawful conduct at issue in this case. See FED. R. EVID. 401. Given the limited scope of the government's proposed testimony regarding the phone's search history, the probative value is not substantially outweighed by any prejudicial impact the

7

testimony may have on Lackey's case. Lackey's general assertion that introduction of the search history would "incite the emotions of the jury," (Doc. 103 at 8), does not sufficiently explain why the prejudice is unfair or substantially disproportionate to the testimony's probative value. Testimony regarding the iPhone's search history is therefore relevant under Rule 401 and not unfairly prejudicial under Rule 403.

### 3. *Text Messages*

Lackey opposes the government's attempt to introduce text messages it believes demonstrate Lackey's attempts to procure a firearm and his intent to distribute cocaine base. (Doc. 103 at 1-8; Doc. 106 at 12-23). Lackey claims these messages are irrelevant, unfairly prejudicial, and hearsay. The selected text message conversations are clearly relevant to both the firearms-possession charge and the drug charge—they tend to show that Lackey was intent on obtaining a firearm and drugs. See FED. R. EVID. 401. And Lackey does not explain why or how the conversations are prejudicial in a way that "substantially outweighs" their probative value. See FED. R. EVID. 403. We thus reject Lackey's relevance and prejudice arguments regarding the text messages.

Lackey also argues that the text messages are inadmissible hearsay. (Doc. 103 at 5-6). Federal Rule of Evidence 801(c) defines "hearsay" as a "statement other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). A statement is not hearsay when it is made by the defendant and that statement is introduced by the opposing party. FED R. EVID. 801(d)(2)(A).

The government clearly intends to offer these text conversations for the "truth of the matter asserted." (See Doc. 106 at 12-23). The text messages sent *from* Lackey's phone are his own statements and are therefore not hearsay under Rule 801(d)(2)(A). See United States v. Lewisbey, 843 F.3d 653, 658 (7th Cir. 2016); see also United States v. Reilly, 33 F.3d 1396, 1411 (3d Cir. 1994). Text messages sent *to* the phone are inadmissible out-of-court statements offered for their truth. FED R. EVID. 801(c); see also Lewisbey, 843 F.3d at 658. The government has not addressed whether the statements qualify as hearsay, or whether they fall within one of Rule 803's exceptions. Text messages sent from the phone are therefore admissible as nonhearsay, while text messages sent to the phone are inadmissible as hearsay.

### C. Character Evidence

Lackey contends that each piece of the government's proffered evidence is improper character evidence intended to show a propensity. (Doc. 103 at 6-7). The government argues that its evidence is not character evidence at all because it is "intrinsic" to the charged offenses or, alternatively, that it is admissible character evidence for a non-propensity purpose. (Doc. 106 at 14-16).[1]

Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R.

---

[1] The government does not intend to introduce Exhibits 13 through 16. (See Doc. 106 at 8). We limit our character-evidence analysis to Exhibits 1 through 5 and sent text messages in Exhibits 17 through 25 because we concluded that Exhibits 6 through 12 and received text messages in Exhibits 17 through 25 are inadmissible.

EVID. 404(b)(1). Evidence of an uncharged crime, wrong, or other act is "intrinsic evidence" of the charged offense and not subject to Rule 404(b)'s general prohibition when it either (a) "directly proves the charged offense," or (b) was "performed contemporaneously with the charged crime" and "facilitate[d] the commission of the charged crime." United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010) (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000)).

The government argues that images of firearms and the text messages recovered from the iPhone are "intrinsic evidence." (Doc. 106 at 14-16). The photographs of firearms do not directly prove that Lackey is guilty of unlawful possession of a firearm. Photographs found on the iPhone show only that he was interested in firearms and possessed images of firearms. The sending and receiving of photographs of firearms in April and May of 2017 does, however, facilitate the later offense of unlawful possession of a weapon. The act of sending or receiving photographs of firearms, viewed in conjunction with text message conversations in which Lackey was actively pursuing a firearm, facilitated the later unlawful possession of firearms and are relevant to Lackey's intent. Images of firearms sent to and from the iPhone are therefore intrinsic evidence and fall outside Rule 404(b).

Like the photographs of firearms, text messages indicating that Lackey was attempting to procure a firearm do not directly prove his later possession. They do, however, facilitate the charged crime of unlawful possession of a firearm—the act of sending a text message inquiring about the availability of firearms facilitates the later possession of firearms. See Green, 617 F.3d at 249 (citation omitted); Bowie, 232 F.3d at 929 (citing 22 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND

10

PROCEDURE § 5239 (1978)); see also 22B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 5246 (2d ed. 2019).  Text messages sent by Lackey are thus admissible.

Unlike the photographs and text messages involving firearms, text messages describing Lackey's efforts to package and distribute cocaine base directly prove elements of the charged offense of possession with intent to distribute cocaine base. Green, 617 F.3d at 249.  That is, the government's proffered exhibits demonstrate Lackey's knowledge or intent to distribute a controlled substance, as well as his possession of said substance.  Therefore, Exhibits 20 through 23 and Exhibit 25 are intrinsic and fall outside of Rule 404(b)'s prohibition on character evidence.

**III.   Conclusion**

We will grant in part and deny in part Lackey's motion (Doc. 102) *in limine*. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     December 2, 2019