IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:17-CR-269** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **MAURICE LACKEY,** | : | |
| | : | |
| **Defendant** | : | |

# MEMORANDUM

Defendant Maurice Lackey was convicted of drug and firearm offenses after a jury trial. Lackey moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (Doc. 148). For the following reasons, we will deny Lackey's motion.

## I.  Factual Background and Procedural History

On August 30, 2017, a federal grand jury returned a three-count indictment charging Lackey with drug and firearm offenses. (See Doc. 1). On August 7, 2019, the grand jury returned a superseding indictment. (See Doc. 83). The superseding indictment charged Lackey with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 1); possession of two firearms—a .45 caliber, Sig Sauer model 220 handgun, serial number G397932, and a .45 caliber Sig Sauer, model 250 handgun, serial number EAK073296—in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count 2); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count 3). (See id.)

A three-day bifurcated jury trial commenced on December 3, 2019.[1]  Two days later, the jury found Lackey guilty of all counts.  (See Docs. 142, 144).  Following his conviction, Lackey timely moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  The motion is now ripe for disposition.

## II.    Standard of Review

On motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial.  United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also United States v. Freeman, 763 F.3d 322, 343 (3d Cir. 2014).  The court must view the evidence in a light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision."  Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)).  Under this highly deferential standard of review, it is not the court's task to "act as the thirteenth juror," weigh credibility, assign weight to evidence, or "substitute [its] judgment for that of the jury."  Id. (citations omitted).  The decision to overturn a conviction based on insufficient evidence may only be made "where the prosecution's failure is clear," United States v. Leon, 739 F.2d 885,

---

[1] The court reporter has provided the court with a rough transcript of the December 2019 jury trial.  Citations thereto are abbreviated as "[Date] Trial Tr."  Pagination of the rough draft may vary from pagination of the official transcript.  Government and defense exhibits are abbreviated as "Gov't Ex." and "Def. Ex.," respectively.

890 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), or where the verdict "fall[s] below the threshold of bare rationality," Caraballo-Rodriguez, 726 F.3d at 431.

## III.   Discussion

In the instant case, all three counts of conviction require "possession" as an essential element. (See Docs. 142, 144); see also 18 U.S.C. §§ 922(g), 924(c); 21 U.S.C. § 841(a)(1). In addition, Count 2 requires a finding that Lackey possessed a firearm "in furtherance of" a drug trafficking crime. (See Docs. 142, 144); see also 18 U.S.C. § 924(c). Lackey moves for judgment of acquittal on the basis that there was insufficient evidence of possession of drugs and firearms, and possession of a firearm "in furtherance of" drug trafficking. (See Doc. 149 at 2-6). The government disagrees and points the court to trial evidence that it believes supports the jury's verdicts. (See Doc. 150 at 4-14). Upon careful review of the trial testimony and exhibits, we agree with the government.

### A.   "Possession" of Drugs and Firearms

The government can establish possession by demonstrating constructive possession, which requires proof that the defendant "knowingly [had] both the power and the intention at a given time to exercise dominion or control over a thing." United States v. Jenkins, 90 F.3d 814, 817-18 (3d Cir. 1996) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993)); see also United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) (citations omitted). The government must also prove that the defendant knew the contraband existed. See Jenkins, 90 F.3d at 818 (quoting Brown, 3 F.3d at 680). This standard demands more than "mere proximity

3

to the [item], or mere presence on the property where it is located or mere association with the person who does control the [item]." Id. at 818 (quoting Brown, 3 F.3d at 680). Similarly, control over a vehicle in which an item is found does not automatically establish possession without additional evidence linking the defendant to the item. See Brown, 3 F.3d at 683. Possession may be sole or joint—that is, it "may be shared with others." Id. at 680 (quoting United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972)).

Lackey argues that the trial evidence failed to establish that he constructively possessed drugs or firearms on the night of his arrest. (Doc. 149 at 2-4). To the contrary, the record is replete with evidence of possession. In its case-in-chief, the government elicited testimony from seven witnesses and submitted 38 exhibits into evidence. On the basis of this testimonial and physical evidence, the jury reasonably concluded that Lackey "possessed" both cocaine base and firearms.

The relevant evidence falls into four categories: testimony regarding the arrest and car search; scientific and expert testimony concerning traces of controlled substances; cell phone evidence; and testimony about Lackey's use of the automobile at issue.[2]

The jury heard testimony from police officers who were on the scene the night of Lackey's arrest. Officers Darrin Bates and Mike Rudy of the Harrisburg Police Department were both involved in Lackey's arrest and the search of the

---

[2] At trial, the government interchangeably referred to the Sig Sauer model 220 as the Sig Sauer P220, and the Sig Sauer model 250 as the Sig Sauer P250. (See Gov't Exs. 1, 24).

4

Cadillac Escalade he was driving. Both officers testified that they observed a Sig Sauer P220 firearm in the upper compartment of the vehicle's center console, located between the driver's seat—where Lackey was sitting—and the passenger seat—where his passenger, Akeem Simmons, was sitting. (See 12/3/19 Trial Tr. 124:15-20, 126:20-128:1 (Bates); 12/4/19 Trial Tr. 38:4-14 (Rudy)). In the center console next to the firearm, Officer Bates identified 17 small bags of cocaine base that later measured roughly 2 grams. (See 12/3/19 Trial Tr. 130:8-131:9; see also Gov't Ex. 14). After officers placed Lackey under arrest, Officer Bates continued his search of the vehicle and identified a second firearm—a Sig Sauer P250—in the center console's lower compartment. (See 12/3/19 Trial Tr. 132:16-22). Officers also recovered $395 from Lackey. (See id. at 136:18-21).

Chief Detective John Goshert, an expert in the field of drug possession and drug distribution, (see 12/4/19 Trial Tr. 52:13-19), testified about the items found in the Escalade. He explained that some of the the cocaine base was packaged in small zip lock bags and some was packaged in a "corner tie."[3] (See id. at 77:24-78:11; see also 12/3/19 Trial Tr. 130:8-131:14). This method of packaging cocaine base is, in Chief Goshert's expert opinion, consistent with drug trafficking. (See 12/4/19 Trial Tr. 57:24-58:23, 66:8-17, 77:10-23). Chief Goshert explained that, because drug trafficking is a dangerous "cash business," drug traffickers often carry substantial amounts of paper money along with firearms for protection. (See id. at 55:5-56:6, 66:8-17, 77:16-23). Chief Goshert ultimately opined that the presence of

---

[3] A "corner tie" is a tied-off piece of a plastic sandwich bag containing a controlled substance. (See id. at 58:15-23, 78:2-11).

5

firearms, packaged cocaine base, and money were three factors indicative of drug trafficking. (See id. at 66:8-17, 77:10-23).

The government also called two individuals to testify about drug residue identified on the money recovered from Lackey. Sergeant First Class Kimberly Boltz ("SFC Boltz") of the Pennsylvania Army National Guard explained that, as part of her duties, she operates a machine called a Smiths Detection IONSCAN Model 500DT ("IONSCAN") that identifies drug residue on various surfaces and materials, including paper money. (See 12/3/19 Trial Tr. 194:18-195:3, 196:3-8). SFC Boltz detailed the IONSCAN testing process and explained that the machine alerted to the presence of cocaine on Lackey's money. (See 12/4/19 Trial Tr. 9:13-12:24; see also Gov't Ex. 34). The money specifically tested positive for both cocaine and "cocaine high," (see 12/4/19 Trial Tr. 11:15-12:24; Gov't Ex. 34), which SFC Boltz described as a reading indicating unusually high trace levels of cocaine, (see 12/4/19 Trial Tr. 12:13-24).[4] Dr. Richard Lareau, an expert in trace detection, (id. at 24:16-21), testified that the IONSCAN is generally accepted in the scientific community and that SFC Boltz followed appropriate testing protocol, (see id. at 27:14-20, 32:4-25). Chief Goshert contextualized this testimony by explaining that a high residue reading for cocaine or cocaine base may indicate that "someone who had handled cocaine handled that money." (See id. at 75:25-76:1).

---

[4] The Pennsylvania National Guard routinely tests currency in the Commonwealth to determine the average amount of drug residue found on currency in general circulation. (See id. at 2:20-5:15; Gov't Exs. 32, 33).

The prosecution also introduced digital evidence recovered from a cell phone found on Lackey's person.[5] The phone contained several probative text messages, internet searches, and photographs. The government introduced several text messages from the months and hours leading up to Lackey's arrest that were also indicative of involvement in drug trafficking. (See Gov't Exs. 53, 54, 55, 56, 57, 58, 60; 12/4/19 Trial Tr. 68:3-73:24). Indeed, one such message was sent roughly four hours before Lackey's arrest. (See Gov't Ex. 53; see also 12/4/19 Trial Tr. 78:12-17). The phone also received photographs of firearms around the same time its user sent text messages indicating an interest in buying said firearms. (See Gov't Exs. 25, 40-44, 52; see also 12/3/19 Trial Tr. 152:14-153:25). Uniquely relevant to this case, searches for a "sig sauer p250 extended clip" and a "sig sauer p250 extended clip 45 auto" were performed on the phone less than two months before Lackey's arrest. (Gov't Ex. 25).

Finally, the government elicited testimony from Tasha Adams, Lackey's girlfriend at the time of his arrest. Adams testified that she was the owner of the Escalade, (see 12/3/19 Trial Tr. 183:21-184:3), and that she never saw Lackey with crack cocaine or a firearm during their relationship, (see id. at 187:25-188:3). Adams also testified that only she and Lackey drove the Escalade, that Lackey maintained the vehicle in good condition, and that he made the vehicle's monthly payments.

---

[5] Neither Officer Bates nor Chief Goshert could conclusively state that Lackey was responsible for all of the phone's contents. (See 12/3/19 Trial Tr. 161:14-162:23 (Bates); 12/4/19 Trial Tr. 82:11-15 (Goshert)). Nonetheless, Officer Bates explained that there was substantial evidence linking the phone to Lackey—the phone identified "Maurice Lackey" as its operator and there were "selfies" of Lackey on the phone. (See 12/3/19 Trial Tr. 140:7-141:1).

(See id. at 186:7-187:12). Importantly, Adams denied owning the firearms or cocaine base found in the vehicle. (See id. at 185:13-186:6). Chief Goshert told the jury that it is common for drug traffickers to use vehicles registered to others to attempt to insulate themselves. (See 12/4/19 Trial Tr. 56:7-11).

After the government presented its case, Lackey called no witnesses and offered no evidence. He argues that the government's showing was insufficient to support his conviction. He specifically asserts that his mere presence in the car in which the drugs and guns were found does not amount to possession. (See Doc. 149 at 3-4). A rational juror, considering the evidence, could reasonably infer far more than mere presence. Lackey's proximity to the firearms and cocaine base, the dangerous and cash-dependent nature of the drug trade, the presence of drug residue on Lackey's money, the incriminating evidence obtained from the phone found on his person, and Lackey's protective and largely exclusive use of the Escalade, for example, each support the jury's conclusion that Lackey possessed the firearms and cocaine base at issue.

Lackey's motion also appears to suggest that the government failed to establish that Akeem Simmons, Lackey's passenger in the Escalade, did not possess the contraband. (See id.) The government, however, is not required to show sole possession or disprove another's possession, as long as it shows that Lackey's possession was either sole or joint. See Brown, 3 F.3d at 680 (quoting Davis, 461 F.2d at 1035). Viewed in a light most favorable to the government, the court concludes that a jury hearing this evidence could rationally, and for that matter quite readily, conclude that Lackey knew of, and had the "power and the intention

. . . to exercise dominion or control over," the cocaine base and firearms in this case. Jenkins, 90 F.3d at 817-18 (citation omitted). We will uphold the jury's finding and deny the motion as to the possession element.

### B. Possession of a Firearm "In Furtherance Of" Drug Trafficking

Count 2 required the government to prove that Lackey possessed a firearm "in furtherance of" drug trafficking. See 18 U.S.C. § 924(c). To convict on a Section 924(c) charge, the government must show more than "mere presence" of a firearm. United States v. Walker, 657 F.3d 160, 172 (3d Cir. 2011) (quoting United States v. Sparrow, 371 F.3d 851, 853 (3d Cir.), as amended (Aug. 3, 2004)). It must link the defendant to the firearm, "showing that his or her possession actually furthered the drug trafficking offense." Id. (quoting Sparrow, 371 F.3d at 853). We consult a nonexclusive list of factors to determine whether possession was "in furtherance of" drug trafficking:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Sparrow, 371 F.3d at 853 (citations omitted). The government need not establish each element of the Sparrow test to maintain a conviction. See Walker, 657 F.3d at 173 (citations omitted).

All eight factors support the jury's verdict in this case. Lackey was arrested in a vehicle containing two firearms and two grams of cocaine base packaged for distribution. The firearms were easily accessible to him, stored in the center

console immediately next to his seat.  Each semiautomatic weapon was loaded with rounds in the magazine or the chamber.  Both firearms were reported stolen.  (See Gov't Ex. 24).  Lackey's possession of them as a convicted felon was plainly unlawful.  (See Gov't Ex. 22).  And the firearms were found near cocaine base and cash containing cocaine residue during a late-night traffic stop.

Based on this evidence, and viewed in a light most favorable to the government, a rational trier of fact could reasonably infer that Lackey's possession of the firearms "actually furthered the drug trafficking offense" in this case. Walker, 657 F.3d at 172 (citation omitted).

IV. **Conclusion**

We will deny Lackey's motion (Doc. 148) for judgment of acquittal.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER<br>
Christopher C. Conner<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated:     June 26, 2020